In the Matter of the Estate of HILDA WESTBERG, Deceased.

Surrogate's Court, New York County, December 20, 1937.

*Gustaf E. Drake,* for Selma Victoria Westberg, contestant-petitioner.

*Cook, Nathan, Lehman & Greenman,* for Clara L. Gruntal, respondent.

*J. Alfred Anderson,* for the Finnish Consul.

DELEHANTY, S. This proceeding was begun by order to show cause why the probate decree of November 27, 1936, should not be vacated and petitioners permitted to file objections to the reception of the instrument hitherto determined to be the last will and testament of deceased. The pertinent legal principles have been many times stated. (*Matter of Leslie,* 175 App. Div. 108, 112; *Matter of Elias,* 222 id. 728; *Matter of Jackson,* 134 Misc. 750; affd., 227 App. Div. 777.) In the *Leslie* case it was said: " It is not open to any one, merely by asserting a nebulous claim to an estate, to ask that a solemn decree admitting a will to probate be vacated, and a long and expensive contest be entered upon. He must first show with some degree of probability that his claim is well founded and that, if afforded an opportunity, he will be able to substantiate it."

To determine whether the petitioner, a sister of the deceased, could produce facts on which a successful will contest could probably be predicated was the sole object of the hearing had in consequence of the motion to vacate the decree. Arguments in the brief of respondent connected with the question whether an oral trust is here present are outside the issue of the proceeding and have been disregarded.

The situation depicted by the uncontroverted facts is substantially this: Deceased was born in Finland. She emigrated to this country

while still a young woman. She entered domestic service and for eighteen years prior to her death on September 1, 1936, she was employed in the household maintained by the sole beneficiary under the will and the beneficiary's mother. During this period deceased had practically no relations with the petitioner or with her brother Karl, both of whom lived in this country. The absence of intercourse between them was a matter of deceased's choice. At the same time deceased was in communication with her sister Julia, who resides abroad. To her she sent regularly both clothes and money. There is no evidence available which offsets the inference that to the time of her death deceased maintained affectionate connection with her European sister. As to her American relatives the evidence goes only to show that deceased did not desire to maintain active social relations with them.

August 20, 1936, is an important date in this proceeding. On that day deceased changed one of her savings bank accounts to an account in survivorship form running to herself and to the present respondent. She then entered the hospital and there she executed the instrument heretofore probated, the content of which (the attestation and testimonium clauses and signatures omitted) is brief enough to admit of quotation in full:

" I, Hilda Westberg, of the City of New York, declare this to be my last will and testament.

" *First.* All of my property and estate of every name and nature I give, devise and bequeath to Clara L. Gruntal, of No. 45 East 85th Street, Borough of Manhattan, City of New York.

" *Second.* I appoint Clara L. Gruntal executrix of this, my will."

This document was drafted by an attorney who is the brother-in-law of the respondent, Miss Gruntal. Miss Gruntal brought it to the hospital for execution. It was signed by the deceased and witnessed by Vera Dye, a floor nurse, and by Katie Speth, an employee then of the respondent's brother-in-law.

A petition for probate of the instrument was sworn to by Miss Gruntal eight days after the death of deceased. On information and belief she alleged that the decedent had left no brother or sister surviving. On September 23, 1936, a petition for an order directing service of citation by publication was signed by respondent. In this petition it was said that throughout her long service in the household of Miss Gruntal the deceased had consistently stated to Miss Gruntal that " she had no living relatives of any kind; and that during the said period she had no relatives who called upon her." The petition also related that on September 3, 1936, Miss Gruntal caused to be inserted in the New York *Times* a death and funeral notice and that " no relative of the decedent was present at the funeral services."

The order of publication was signed. The citation was returnable on November 5, 1936. By an order of November 9, 1936, a special guardian was appointed to represent " the infants and incompetent heirs, if any, whose names are unknown."

Meantime on or shortly after the date when the will was filed and petition executed for its probate the attorneys for the sole beneficiary sent to the Finnish Consul the passport found among the effects of deceased. The Consul communicated with his home government. On November 6, 1936, he notified the attorneys for Miss Gruntal that deceased had certain living relatives whose names were specified and in the case of the sister Julia an address was supplied. Three days later the attorneys wrote to Julia desiring her to inform them (a) when deceased emigrated to the United States of America, and (b) of the exact whereabouts of the sister Selma and the brother Karl. Then the letter concludes as follows: " It is very important that you advise us of the above as soon as possible." Nothing was said of the disposition of the estate nor of its value. No copy of the will was sent. Apparently Julia later wrote to the attorneys seeking information respecting the property. Under date of December 12, 1936, they replied as follows: " We have your letter of November 30th. Miss Hilda Westberg died leaving a last will and testament, which was admitted to probate by the Surrogate's Court, New York County. Miss Westberg bequeathed all of her property to Clara L. Gruntal of this city."

Before the will was admitted to probate attorneys for the proponent by a letter dated November 20, 1936, notified the office of the surrogate of the existence of the brother and two sisters of deceased. The letter states that the attorneys for proponent had " requested the Consulate General of Finland if (sic) he would file a Notice of Appearance on behalf of the persons " related to deceased. " You will find enclosed herewith such notice of appearance." It was further brought out by the letter that the special guardian was " very anxious to proceed with the examination of the subscribing witnesses and to file his report " so that he could go south for the winter. The attorneys desired to know whether under these circumstances they might proceed to the examination of the subscribing witnesses and " attend to the entry of a Decree admitting the will to probate." This query was referred to the surrogate by his clerk. The surrogate replied that the proceedings need not be arrested since the jurisdiction had been secured by publication, private counsel had not appeared for the respondents in that proceeding and the Consul, therefore, could properly appear. The clerk thereupon examined the subscribing witnesses. Vera Dye, the floor nurse, deposed that she had known the decedent " a few weeks " before the execution of the

instrument. She declared that the deceased at the time of the execution was in the opinion of the witness of sound mind and not under restraint. A similar deposition was made by Katie Speth, except that she asserted acquaintance with deceased for a period of "over one year." No objections being interposed by the Finnish Consul the instrument was in due course admitted to probate as uncontested.

At the hearing on the present motion to vacate the decree Miss Dye testified that deceased was a perfectly normal patient. She could not remember the exact time when deceased was at the hospital; she was uncertain whether Miss Gruntal was present when the will was executed; she had read the will but did not recall its contents. She denied that deceased had made any statement to Miss Gruntal which indicated an intention by deceased to commit her property to the care of Miss Gruntal for the benefit of others. She was not asked to explain the statement that she had known decedent "a few weeks" although the will was executed the day the deceased entered the hospital when the witness first met her.

Katie Speth, the other subscribing witness, testified that she went to the hospital with Miss Gruntal for the purpose of witnessing the will. When they entered the hospital room of deceased she testified that Miss Gruntal said to deceased: "I have the will here." Thereupon "Hilda Westberg, she sat up in bed and she said, 'Miss Clara, if I shouldn't come out of here, how do I ever know that the people get the money I told you about.'" According to the witness Miss Gruntal then turned to the witness and said, "She wants me that I should give some of the money to a poor woman."

Miss Gruntal when testifying denied having made any such statement and denied making other similar statements. The testimony of Katie Speth was also contradicted by Mr. and Mrs. Rusch who are presently employed in a family connected with the respondent here. The only other witness (except for an attorney whose testimony is covered by what has already been said) was Johanna Emilson, a friend of deceased for fourteen years. She testified that deceased had denied to her having any relatives. With reference to Mrs. Backlund (the sister Julia), for whom it is established that deceased acted as benefactor, the witness stated that in express terms deceased denied being related to said sister.

One further fact must be mentioned. On September 3, 1936, the death and funeral notice caught the eye of the deceased's sister Selma, the petitioner here. She went to the funeral parlor to view the remains. There she encountered Miss Gruntal and they had some conversation. According to petitioner she told Miss Gruntal that she was the sister of deceased. Miss Gruntal denies this but

her testimony shows that the question of whether petitioner was sister to the deceased was at least raised.

From the time when this will was admitted to probate until October 1, 1937, the moving party was inactive. The present proceeding was begun as a result of a letter written by Katie Speth to Selma Westberg followed by an interview between them at which Katie Speth claims to have told for the first time her version of what transpired on the date of the will's execution. She had kept silence up to that time, salving her conscience, she says, by reason of her belief that Miss Gruntal would carry out the wishes of the deceased as orally expressed.

It should be stated that the distributees of the deceased seem not to have had actual notice of the original probate proceeding. On the whole record it would seem that the decree heretofore made should be vacated and an opportunity afforded petitioner to contest the probate. Perhaps something should be said about the meaning of the rule that the petitioner in this type of proceeding should show such facts as render her success in an actual contest *probable*. In common language this term is used to refer to past or future occurrences and to human judgment about these occurrences. When applied to past occurrences it may be said to be used inaccurately because accomplished facts are always certain and never merely probable. Opinions respecting past facts may of course be merely probable owing to deficiencies in available evidence or due to weakness of insight in the person striving to ascertain the past fact. When we turn toward the future, however, we find that no human event is certain. A future event at most is probable because no outcome of causal operations wholly or partially derived from men (as for example is a situation where a jury or a court without a jury reaches a verdict or decision in a probate contest) possesses a character of inevitability. Probability (the maximum attribute of a future happening) attaches thereto when all present factors seem to an experienced mind occupying a position favorable for judging to indicate a particular result.

The court here has had the benefit of a partial rehearsal of a probate contest. It has been shown a will which makes an unnatural distribution of deceased's property; a will drafted by an attorney related to the sole beneficiary; a will produced at the hospital by this beneficiary; a will giving deceased's all to one who may have been in a position to exercise controlling influence over deceased. From the side of the relatives of deceased it is shown that they had *no actual notice* of the probate; that they were not hostile to deceased; and that one of them at least over a long period of years had been the recipient of deceased's bounty. It stands established

that before proceedings had begun for the probate of the will the sole beneficiary had met one sister of deceased and was sufficiently on notice concerning her existence to have hesitated to execute the original petition for probate. Finally, respondent's own testimony concerning the expressed attitude of deceased toward the existence of her relatives coupled with deceased's actual conduct in respect of her sister Julia raises a serious question concerning the competency of deceased to make a will. The testimony of Katie Speth may convince a trial court or jury that deceased did not really understand what she was signing. It may be that these and other factors may not suffice on the actual trial to overthrow the will in the event of a contest. But as that word is used in the cases it is "probable," that a contest would have an outcome favorable to the claims of the present petitioner. At least the court should not foreclose a trial at which the parties will have each a full hearing and at which it can be determined whether a stranger to deceased's blood standing in respondents's relationship to deceased may exclude deceased's blood from any share in the estate. If there be room for exercise of discretion, this case calls for liberality of treatment and the court accordingly grants the prayer of the petition, reopens the probate decree and directs that objections to probate may be filed by any interested party within ten days from the date of the decree to be entered hereon.

Submit, on notice, decree accordingly.